## Case No. 3,483.

### CUNNINGHAM v. MACON & B. R. CO. et al.

[3 Woods, 418.][1]

Circuit Court, S. D. Georgia. Nov. Term, 1878.

STATE AID—CONSTRUCTION OF STATUTE—JURISDICTION—SUIT AGAINST STATE.

1. The purpose of the provisions of the act of the legislature of Georgia, passed December 3, 1866, which established a statutory mortgage on all the property of the Macon & Brunswick Railroad Company, to secure the payment of the bonds of the company, indorsed by the governor, was to protect the state from loss on account of such indorsement, and their effect was not to make the state a trustee for the bondholders.

2. A bill in equity which seeks to take from the possession of a state, property possessed and claimed by it, and to subject it to the payment of bonds, which the bill alleges were indorsed by the state, but which indorsement the state denies, though nominally brought against the governor and other state officers, is in substance a suit against the state, and cannot be maintained in a court of the United States on the theory that the state has assumed the duties of a trustee for the holders of said bonds.

In equity. Heard on demurrer of Alfred H. Colquitt to the bill of complaint.

The bill was filed by George A. Cunningham, a citizen of Virginia, against the Macon & Brunswick Railroad Company, and "J. W. Renfroe, treasurer of the state of Georgia; Alfred H. Colquitt, governor of the state of Georgia," and against Edward A. Flewellyn, W. A. Loftin, and George S. Jones, who styled themselves "directors of the Macon & Brunswick Railroad Company," John H. James, and others [and the First National Bank of Macon], all citizens of the state of Georgia.

The averments of the bill were substantially as follows:

On December 3, 1866, the general assembly of Georgia passed an act authorizing the governor to indorse certain bonds of the Macon & Brunswick Railroad Company. This act (Laws 1866, pp. 127, 128) declared that the governor was thereby authorized "to place the indorsement of the state" upon the bonds of the said railroad company to the amount of $10,000 per mile for as many miles of said road as were then completed, and the like amount for every additional ten miles as the same might be completed and put in running order, on the following terms and conditions, to wit: "Before any such indorsement shall be made, that so much of the road as the said indorsement shall be applied for, is completed," etc., "and that said road is free from all liens or mortgages or other incumbrances which may in any manner endanger the security of the state, and upon the further condition and express understanding that any indorsement of said bonds, when

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

thus made, shall not only vest the title to all property of every kind, which may be purchased with said bonds, in the state, until all the bonds so indorsed shall be paid, but the said indorsement shall be and is hereby understood to operate as a prior lien or mortgage on all the property of the company, to be enforced as hereinafter provided." The act then proceeded to declare that "in the event any bond or bonds indorsed by the state, as provided in the first section of this act, shall not be paid by said railroad company at maturity or when due, it shall be the duty of the governor, upon information of such default by any holder of said bond or bonds, to seize and take possession of all the property of said railroad company and apply the earnings of said road to the extinguishment of said bond or bonds or coupons, and sell the said road and its equipments and other property belonging to said company, in such manner and at such time as in his judgment may best subserve the interest of all concerned."

Subsequently the general assembly of the state passed a series of joint resolutions, which were approved December 4, 1866 (Laws 1866, p. 220), which declared that said railroad company should not sell or dispose of the said bonds, to be indorsed by the governor at a discount greater than ten per cent.; that the indorsement of the state upon the bonds should not exceed one million of dollars until an amount of capital equal to the additional indorsement should be bona fide subscribed and paid into said company, and that in order more fully to secure the payment of the said bonds, it should be the duty of the railroad company to set apart annually two per cent. of the amount indorsed for as a sinking fund, which should be invested in state bonds and deposited with the governor, to be held in trust for said company, and which should be applied exclusively to the payment of the bonds of said company. Under these provisions of law, the bill averred that the railroad company issued bonds to the amount of $1,950,000, which were indorsed by the governor, and afterwards negotiated by the railroad company, and that said indorsement operated as a statutory mortgage upon all the property which said railroad company held at the time of the indorsement, to the holders of said bonds to secure the payment of the bonds held by them.

On October 27, 1870, the general assembly passed an amendment to the act above mentioned, authorizing the governor to indorse additional bonds of said company to the extent of $3,000 per mile. This amending act (Laws Ga. 1870, p. 336) is entitled "An act to amend an act to extend the aid of the state to the completion of the Macon & Brunswick Railroad and for other purposes," and declares "that the above recited act be so amended as to authorize the governor to place the indorsement of the state, to the

extent of $3,000 per mile, upon the bonds of said Macon & Brunswick Railroad Company, in addition to ten thousand dollars, as recited in the act of which this is amendatory." After the passage of this last named act, and by its authority, the governor indorsed additional bonds of said company to the amount of $3,000 per mile of said company's road, amounting in the aggregate to $600,000, which were put in circulation by the company for a valuable consideration.

The complainant is the bona fide holder, for a valuable consideration, of nineteen of said second series bonds, of the denomination of $1,000 each.

On July 1, 1873, and on November 1, 1873, the said railroad company failed to pay the coupons on both said series of bonds which fell due at those dates respectively, and has not at any time since paid said coupons, nor any coupons falling due at subsequent dates. On July 2, 1873, the governor, by virtue of the provisions of the act of 1866, seized the railroad and all other property of said company, on account of the default in the payment of said interest coupons. On March 6, 1875 (Laws 1875, p. 371), the general assembly passed a series of resolutions declaring the indorsement of the state upon said second series of bonds, amounting to $600,000, to be unconstitutional, null and void, and re-affirming the validity of the indorsement of the governor on the first series of $1,950,000, and authorizing the governor to sell the railroad, with its franchises, equipments, etc., upon such terms and for such price in money or first mortgage indorsed bonds (naming the series of $1,950,000) of the Macon & Brunswick Railroad, or of the bonds of the state, as in his judgment might be consistent with the interests of the state. On the first Tuesday of June, 1875, the road and other property of said company was, by the orders of his excellency James M. Smith, who was then the governor of Georgia, sold, after due advertisement, and was by him purchased for the state for the sum of $100,000, and was afterwards conveyed by deed of said governor to the state of Georgia.

The bill averred that the said sale was void, because (1), the governor excluded the bonds of the $600,000 series from being used as cash in the purchase of the road at their face value; and (2), because the governor was not authorized to bid on said property for the state, and had no constitutional power to make the purchase; that if said sale was not void, it was voidable, because, on the facts, the state was a trustee of the mortgaged property for the benefit of the bondholders, and had no right to buy at her own sale as such trustee, without incurring the risk of having the sale set aside at the instance of any beneficiary under the trust, and the complainant, as such beneficiary, elected to set said sale aside. The state of Georgia has voluntarily taken up all of the

$1,950,000 series of bonds for which she became liable by the indorsement, by issuing therefor her own bonds, dollar for dollar, and the defendant Renfroe, as treasurer of the state, is regularly paying the interest on the bonds so substituted as it falls due. The state purchased at said sale certain property of the railroad company which was not covered by the said statutory mortgage, to secure the said series of bonds amounting to $1,950,000, because said property was acquired by the railroad company with funds other than the proceeds of said bonds, but was covered by said mortgage so far as to secure the $600,000 series of bonds having been bought subsequent to the indorsement of said last-named bonds. The bonds indorsed by the governor, to the extent of $3,000 per mile, under authority of the act of 1870, are entitled to the benefit of the statutory mortgage created by the act of 1866, after the payment of the bonds indorsed by authority of the latter act, and as these have been voluntarily paid by the state, the second series of $600,000 now constitutes the first lien, and are entitled to have said mortgage foreclosed for their payment. By a deed dated June 30, 1873, the Macon & Brunswick Railroad Company conveyed certain property to L. N. Whittle, Esq., and another in trust, to sell the same, and out of its proceeds to pay certain fare tickets issued by the company; that said trust was never executed, but said fare tickets were paid out of the earnings of the railroad after it had been seized by the state, and part of said property, consisting of three bonds of $1,000 each of said first series of the Macon & Brunswick Railroad bonds, indorsed by the state, and four hundred and forty shares of stock of the Southern & Atlantic Telegraph Company were transferred to the defendant Renfroe, as treasurer of the state, and certain real estate in the city of Macon, also included in said trust-deed to Whittle, is held and claimed by the First National Bank of Macon. All of said property was seized by the governor and sold by him at the sale above mentioned.

The bill further stated that it was filed for the purpose of foreclosing said statutory mortgage to pay the said second series of indorsed bonds, upon the assumption that the mortgage to the governor of Georgia was to him as trustee for the bondholders, to secure the payment of the bonds indorsed by the state, and was not a mortgage of indemnity to the state to secure her harmless against liability incurred by said indorsement, but if the court should be of opinion that the statutory mortgage was one of indemnity to the state, and the sale of the railroad property and its purchase by the state were valid, then the bill insists that both series of indorsed bonds stand upon the same footing, and are entitled to be paid pro rata out of the proceeds of said sale, and that the sums paid by said Renfroe, as treasurer of state, in taking up the coupons of the state bonds, which have been ex-

changed for the $1,950,000 indorsed railroad bonds, represent a portion of their proceeds, and should be paid pro rata on both series of indorsed bonds, and that when the legislature of Georgia appropriates any sum for the payment of the principal of the state bonds so exchanged, such sum should, in like manner, be divided pro rata among the holders of both series of indorsed bonds, and that the bonds so exchanged should themselves be treated as the proceeds of the sale of the railroad property, and divided pro rata among all the holders of both series of the indorsed bonds. The bill further averred that the defendant John H. James, and many others unknown, were holders of said state bonds so exchanged as aforesaid.

The bill prayed for the appointment of a receiver for all the property covered by said statutory mortgage, and that said statutory mortgage might be foreclosed and the property embraced therein sold, and the proceeds applied to the payment of the $600,000 series of bonds indorsed by the state, or if the court should be of opinion that said mortgage was a mortgage of indemnity, and said purchase of the railroad by the state valid, then, that any of said property not covered by said mortgage, might be required to be delivered by the holders to the receiver, to be apportioned, and that said Renfroe might be enjoined from paying any further coupons on the bonds of the state exchanged for the $1,950,000 series of indorsed railroad bonds, and that the holders of the exchanged bonds, when discovered, might be compelled to account to the complainant and other holders of bonds of said $600,000 series for their pro rata of such exchanged bonds, and that said defendant James might be restrained from disposing of said exchanged bonds held by him.

To this bill, Alfred H. Colquitt, governor of the state of Georgia, filed his demurrer, claiming that the court could not take cognizance of the matters and things set up in said bill, as against him, because he had no personal interest in the suit, and the same was an attempt to reach the state of Georgia through him, as governor, and to make it a party to said proceedings, so as to bind it by the decree of the court, and praying that the bill be dismissed as to him.

A. G. McGrath and W. W. Montgomery, for complainant.

R. N. Ely, Atty. Gen. of Georgia, and R. F. Lyon, for defendants.

WOODS, Circuit Judge. If, upon the facts of the bill, the statutory mortgage was intended as an indemnity to the state to secure it against its indorsement of the bonds of the railroad company, the question raised by the demurrer has already been considered and decided by this court adversely to the case made by the complainant. See Branch v. Macon & B. R. Co. [Case No. 1,808].

That such was the purpose of the act of December 3, 1866, is, in my judgment, clear. The constitution of the state of Georgia, in force at the time of the passage of this act, declared, "Nor shall the credit of the state be granted or loaned to aid any company, without a provision that the whole property of the company shall be bound for the security of the state, prior to any other debt or lien, except to laborers." The act of December 3. 1866, and the resolutions of December 4, were unquestionably framed in view of this constitutional provision. The act declares that before any indorsement of the railroad bonds is made by the governor, he shall be satisfied that the road is free from all liens, etc., which may in any manner endanger the security of the state. The state, through the legislature, provided this statutory mortgage to secure herself against her indorsement of the bonds of the railroad company. That was the prime and obvious intent of this legislation. Its purpose was not to put upon the state the duties of a trustee for the benefit of the holders of the bonds of the railroad company. If this view is correct. the question raised by the demurrer is settled, so far as this court is concerned, by the case above mentioned.

To say that the state, under the facts, is a trustee for the bondholders, does not change the case; because every surety who holds property for his own indemnity, may be called upon by the creditor to apply the property to the payment of his debt. The surety, however, is still a surety, and holds the property primarily for his own protection. But concede that the legislation above referred to makes the state a trustee for the holders of the railroad bonds indorsed by the state. Does that view relieve the bill from the objection raised by the demurrer?

The state denies, as appears by the bill, the validity of its indorsement upon the bonds held by complainant. She says it is without constitutional warrant, and null and void. If this is true, then the state has assumed none of the duties of a trustee for the holders of these bonds. She denies, in effect, that she is under any obligation as trustee, or otherwise, to these bondholders. The complainant seeks to hold the state to this indorsement, and having done that to compel her to appropriate to the payment of the indorsed bonds property which she claims as her own. As remarked by Mr. Justice Bradley in the case of Branch v. Macon & B. R. Co., supra: "To sustain the complainant's case the court would be compelled to decide upon the state's liability on its indorsement of the second issue of bonds. * * * The court is asked to make a decree operating directly upon the rights of the state, and transferring them to the complainant and the other bondholders. It is not merely the possession of its agents, but the actual right and title of the state itself which are sought to be affected or transferred. We think this

cannot be accomplished without making the state a party to the suit, and that cannot be done."

The entire property mentioned in the bill was seized by the state as covered by the statutory mortgage. It was sold, and bought for and conveyed to the state, and the state is in possession, asserting title to all but a small part of the property. The main purpose of the bill is to dispute the title of the state to the property possessed and claimed by her, and by the decree of this court to transfer the property to the holders of a series of bonds with whom the state claims she never entered into any valid obligation whatever. That is the case made by the bill, when stripped of the plausible theories with which the genius of counsel has clothed it.

The bill is, to all intents and purposes, a suit against the state. It is mainly her property, and not that of Alfred H. Colquitt, or J. W. Renfroe, that is to be affected by the decree of the court. It is the title of the state that is assailed. The attack is not made against the state directly, but through her officers. This indirect way of making the state a party is just as open to objection as if the state had been named as a defendant. But there is a part of the property mentioned in the bill, and as against which relief is sought, to wit: Lots numbers one and seven, in block ten, southwest common, city of Macon, which is not now in possession of or claimed by the state of Georgia, but is held and claimed by the First National Bank of Macon, as purchaser from the state, which is made a defendant to the bill. In sustaining the demurrer of Alfred H. Colquitt, that part of the bill relating to the property claimed by the First National Bank of Macon is left untouched. Demurrer of Alfred H. Colquitt sustained.

[NOTE. Complainant appealed, and the decree dismissing the bill was affirmed by the supreme court.

[Mr. Chief Justice Waite, in delivering the principal opinion, assigned as the grounds of affirmance that the state of Georgia was an indispensable party to the controversy, and in fact the only proper defendant, and, as the circuit court had no jurisdiction of a suit against the state, the bill was rightfully dismissed. Cunningham v. Macon & B. R. Co., 109 U. S. 446, 3 Sup. Ct. 292, 609.]